## Woodard *v.* Woodard, Appellant.

Argued April 29, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Henry Kauffman,* with him *Thomas L. Kane* and *Louis Little,* for appellant.

*Ellis R. Defibaugh,* with him *Dipple & Oliver,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1937:

This is an appeal from a divorce granted by the learned court below on the grounds of cruel and barbarous treatment and indignities to the person.

The parties were married November 22, 1931, when they were students at the University of Pittsburgh. Shortly thereafter they went to live at the home of respondent's parents in Ford City, where they remained until August, 1932, when the libellant left the respondent.

The libellant testified that the respondent was very irritable and jealous; that he, in the presence of his father, called her vile names reflecting on her fidelity; that he insisted on having sexual relations with her when her physical condition did not warrant them, that about the middle of August, 1932, when she was pregnant, he, in a fit of rage, and "acting like a crazy man," knocked her down and then struck her several times. A few days thereafter he attacked her again by pulling her off the couch on which she was lying and kicked her. She said that he was so violent at times it was necessary for her to call his father and brother to restrain him. Due to respondent's treatment of her, she became ill, nervously unstrung, and unable to sleep. Shortly after the second assault she called her father and asked him to come and take her away. Her uncle, N. O. Walgren, who accompanied the father when he went for his daughter, testified that when they called she was in a nervous, excited, and scared condition, and became hysterical. On January 9, 1933, she gave birth to a baby.

A few days after June 11, 1935, the date the libel was filed, the respondent called at the apartment of libellant's parents, and, after some conversation with the libellant, she, with the child, started out of the room. He followed her into the lobby and endeavored to hold the door to prevent her from departing. Then he took the baby from her and forcibly attempted to carry her up the stairs. She became frightened and called for aid.

He wrote her letters acknowledging that he had "struck heavy blows with my fists on your broken body filled with our baby," and had "told everybody of the family that I was in error and ashamed." He referred therein to his "terrible behaviour" and to having confessed to the priest that he had beaten his wife. In his testimony, he admitted hitting the libellant on one occasion, but he charged her with having precipitated the fight by striking him several blows, biting him on the shoulder, and breaking his glasses. He denied assaulting her thereafter; once when she attacked him he grabbed her, simply for the purpose of restraining her. His explanation of the many contrite statements in his letters was that they were made in the hope that by assuming all blame a reconciliation might be effected.

If it were not for the letters, which strongly corroborate the libellant, we would have some hesitancy in approving the granting of this divorce. But after giving due consideration to the trial judge's conclusions, which should not be lightly disregarded as he saw and heard the witnesses (*Koontz v. Koontz,* 97 Pa. Superior Ct. 70), and to the record and argument of counsel, we are convinced that this temperamental respondent subjected his wife to a course of treatment which, under the law, justifies a severance of the marital ties.

Decree of the lower court is affirmed.